**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 21-60214-CIV-RUIZ/STRAUSS

ACUSHNET COMPANY and
SCOTT CAMERON GOLF DESIGN, INC.,

                    Plaintiffs,

vs.

AIGOLF STORE, *et al.*,

                    Defendants.

_____ /

**PLAINTIFFS' MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**
**AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiffs, Acushnet Company ("Acushnet") and Scott Cameron Golf Design, Inc. ("Scott

Cameron Golf") ("Plaintiffs"), by and through their undersigned counsel, hereby move this

Honorable Court for an entry of final default judgment against Defendants, the Individuals,

Partnerships, and Unincorporated Associations identified on Schedule "A" hereto

("Defendants").[1] In support thereof, Plaintiffs submit the following Memorandum of Law.

**I.**      **INTRODUCTION**

Plaintiffs initiated this action against Defendants through the filing of their Complaint

and subsequent Amended Complaint for trademark counterfeiting and infringement, false

designation of origin, common law unfair competition, and common law trademark

infringement. Defendants are in default, and the prerequisites for a default judgment have been

_____

[1] Plaintiffs have resolved their claims with Defendant ricklane (Defendant Number 75) and filed
a Motion for an Extension of Time to File Motion for Default Final Judgment or Notice of Joint
Liability as to Defendant ricklane [ECF No. 34], which is currently pending before the Court.
Accordingly, Plaintiffs' Motion only seeks judgment against the remaining Defendants identified
on Schedule "A" hereto. (See Declaration of Virgilio Gigante in Support of Plaintiffs' Motion
for Entry of Final Default Judgment Against Defendants ("Gigante Decl. in Support of FDJ") ¶
1, n.1, filed herewith.)

met.  As relief, Plaintiffs seek default judgment finding Defendants liable on all counts of

Plaintiffs' Amended Complaint. [2]   Plaintiffs pray such judgment includes the entry of a

permanent injunction and an award of statutory damages to Plaintiffs for Defendants' willful

counterfeiting pursuant to 15 U.S.C. § 1117(c).  Plaintiffs also request the Court order the

listings and associated images of goods bearing counterfeits and/or infringements of Plaintiffs'

trademarks used by Defendants be permanently removed and the goods of each Defendant

bearing one or more of Plaintiffs' trademarks held by the marketplace platforms be surrendered

to Plaintiffs to ensure the associated e-commerce marketplace stores may no longer be used as a

means for selling goods bearing counterfeits and infringements of Plaintiffs' trademarks and

infringing upon Plaintiffs' rights.

## II.     STATEMENT OF FACTS

### A.     Plaintiffs' Rights.

Acushnet Company is the owner and/or exclusive licensee of the federally registered

trademarks ("Acushnet Marks") identified in Paragraph 5 of the Declaration of Lisa Rogan in

Support of Plaintiffs' Application for Temporary Restraining Order[3] ("Rogan Decl.") [ECF No.

6-2]; Declaration of Roland A. Giroux in Support of Application for TRO ("Giroux Decl.") [ECF

No. 6-3].)  The Acushnet Marks are used in connection with the design, manufacture and

distribution of, among other things, golf equipment and related products. (See Giroux Decl. ¶ 4;

Rogan Decl. ¶¶ 4-5.)

---

[2] Plaintiffs are not requesting the Court award damages against Defendants jointly and severally; therefore, there is no possibility of inconsistent liability.

[3] Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction (the "Application for TRO") together with supporting declarations and exhibits, [ECF No. 6], are incorporated herein by reference.

The Acushnet Marks are symbols of Plaintiffs' quality, reputations, and goodwill and have never been abandoned. (See Giroux Decl. ¶¶ 6-8; Rogan Decl. ¶¶ 7-9.)   Moreover, Plaintiffs expend substantial time, money, and other resources developing, advertising, and otherwise promoting the Acushnet Marks. (Id.)   Accordingly, the Acushnet Marks qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1).

Plaintiffs have extensively used, advertised, and promoted Plaintiffs' Marks in the United States in association with its goods, and have carefully monitored and policed the use of the trademarks. (See Giroux Decl. ¶¶ 6-8; Rogan Decl. ¶¶ 7-9.)  As a result, members of the consuming public readily identify products bearing the Acushnet Marks as being high quality merchandise sponsored and approved by Plaintiffs, and the Acushnet Marks have achieved secondary meaning as identifiers of quality products.  (Id.)

### B.      Defendants' Infringing Acts.

As alleged by Plaintiffs, admitted by default, and established by the evidence submitted herewith, Defendants operate and control the Internet based e-commerce stores established via third-party marketplace platforms under their seller identification names set forth on Schedule "A" hereto (the "Seller IDs").  As such, Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale or sale of goods bearing counterfeit and infringing marks which are exact copies of the Acushnet Marks (the "Counterfeit Goods"). (See Am. Compl. ¶¶ 8-14; 24-39, 41-43, 48-52, 56-58, 61-63; see also Giroux Decl. ¶¶ 12-14; Rogan Decl. ¶¶ 13-15; Declaration of Virgilio Gigante in Support of Plaintiffs' Application for TRO ("Gigante Decl.") [ECF No. 6-4] ¶ 2; Declaration of Kathleen Burns in Support of Plaintiffs' Application for TRO ("Burns Decl.") [ECF No. 6-5] ¶ 4; see also relevant web page captures from Defendants' Internet based e-commerce stores operating under

the Seller IDs displaying Plaintiffs' branded items offered for sale attached as Comp. Ex. "1" to the Burns Decl., [ECF No. 6-6 through 6-7], incorporated herein by reference.)

Further, as admitted by Defendants through default, at all times relevant, Defendants have had full knowledge of Plaintiffs' ownership of the Acushnet Marks, including their exclusive rights to use and license the Acushnet Marks and the goodwill associated therewith. (Am. Compl. ¶ 24.) Defendants do not have, nor have they ever had, the right or authority to use the Acushnet Marks for any purpose. (See Giroux Decl. ¶ 10; Rogan Decl. ¶ 11.) Despite their known lack of authority to do so, Defendants have engaged in the activity of promoting, and otherwise advertising, selling, offering for sale, and distributing their Counterfeit Goods via the Seller IDs. (See Am. Compl. ¶ 8-14, 24-39; see also Giroux Decl. ¶¶ 12-14; Rogan Decl. ¶¶ 13-15; Gigante Decl. ¶ 2; Burns Decl. ¶ 4 and Comp. Ex. 1 thereto.)

 Plaintiffs' evidence obtained as a result of their investigation of Defendants clearly demonstrates Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing counterfeits of the Acushnet Marks. Specifically, Plaintiffs' counsel retained Invisible Inc, a licensed private investigation firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded merchandise through the Seller IDs. (Giroux Decl. ¶ 11; Rogan Decl. ¶ 12; Burns Decl. ¶ 3; Gigante Decl. ¶ 2.) Invisible Inc accessed each of the e-commerce stores operating under Defendants' Seller IDs, placed an order from each of the Seller IDs for the purchase of various products – all bearing and/using counterfeits of at least one of the Acushnet Marks – and requested each product to be shipped to addresses in the Southern District of Florida. (See Burns Decl. ¶ 4 and Comp. Ex. "1" thereto.)

Each order was processed entirely online and following the submission the orders, Invisible Inc

finalized payment[4] for the products ordered via Defendants' respective payment accounts and/or

payee[5] as identified on Schedule "A" hereto. (See id.)  At the conclusion of the process, the

detailed web page captures and images of products ordered via each Defendants' Seller IDs,

together with photographs of products received, were sent to Plaintiffs' representatives for

inspection. (See Burns Decl. ¶ 4; Gigante Decl. ¶ 2; Giroux Decl. ¶ 12; Rogan Decl. ¶ 13.)

Plaintiffs' representatives reviewed and visually inspected their respective branded goods offered

for sale and ordered by Invisible Inc via each of the Seller IDs by reviewing the e-commerce

stores operating under the Seller IDs, or the detailed web page captures and images of the items,

together with detailed photographs of the items bearing the Acushnet Marks, and determined the

---

[4]  Invisible Inc was instructed not to transmit the funds to finalize the sale for the orders from many
Defendants so as to avoid adding funding Defendants' coffers. (See Burns Decl. ¶ 4 n.1; Gigante
Decl. ¶ 2, n.1.

[5]   Defendant Numbers 1–25 operate via the non-party Internet marketplace platform,
AliExpress.com, and have their payments processed on their behalf using Alipay. Additionally,
Defendant Numbers 3, 5, 7, 9, 21, and 24 have their payments processed on their behalf using
PayPal, identifying the payee Alipay Singapore E-Commerce, which is the aggregate PayPal
account for purchases made via PayPal on AliExpress.com. As such, Defendants' payment
information is not publicly disclosed.

Defendant Numbers 26–51 operate via the non-party Internet marketplace platform, eBay.com,
and use money transfer and retention services with PayPal. Moreover, Defendant Number 24–25,
who operate via AliExpress.com, use money transfer and retention services via individual PayPal
accounts as additional payment methods.

Defendants Numbers 52–55 operate via the non-party Internet marketplace platform,
DHgate.com, which processes its payments via the third-party platform, DHpay.com. As such,
Defendants' payment information is not publicly disclosed.

Defendant Numbers 56–81 operate via the non-party e-commerce marketplace platform,
Wish.com ("Wish"), which is operated by ContextLogic Inc. ("ContextLogic"). The payee for
the orders placed from Defendant Numbers 56–81's Wish.com Seller IDs identifies "PayPal
*Wish," which is the aggregate PayPal account for purchases made via Wish.com..  (See Gigante
Decl. ¶¶ 4–7; Burns Decl. ¶ 4 n.2.)

products were non-genuine, unauthorized versions of Plaintiffs' goods. (See Giroux Decl. ¶¶ 12-14; Rogan Decl. ¶¶ 13-15.)

### C.    Procedural Background

On January 28, 2021, Plaintiffs filed their Complaint, and on February 26, 2021 their Amended Complaint for Damages and Injunctive Relief against Defendants.  On January 29, 2021, Plaintiffs filed their Application for Temporary Restraining Order. On February 6, 2021, this Court entered a Sealed Order Granting Plaintiffs' *Ex Parte* Temporary Restraining Order, [ECF No. 9], and subsequently converted the temporary restraining order into a preliminary injunction on March 23, 2021, [ECF No.  29]. The Temporary Restraining Order and Preliminary Injunction required, *inter alia*, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd. and Alipay.com Co., Ltd., and Alipay Singapore E-Commerce Private Limited (collectively, "Alipay"), Worldpay US, Inc. ("Worldpay"), ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, and PayPal, Inc. ("PayPal"), and their related companies and affiliates to identify and restrain all funds in Defendants' associated payment accounts, and divert those funds to a holding account for the trust of the Court.  Subsequently, Plaintiffs' counsel received notice from the applicable financial institutions that they complied with the requirements of the Court's Order and restrained Defendants' funds. (See Gigante Decl. in Support of FDJ ¶ 2, filed herewith.)

On January 29, 2021, Plaintiffs filed their *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants, [ECF No. 7],[6] which the Court granted on February 6, 2021 [ECF No. 10], authorizing Plaintiffs to serve the summonses, Amended Complaint, and all filings and discovery in this matter upon Defendants via electronic mail ("e-mail") or via website posting on Plaintiffs' serving notice website.  Pursuant to the Court's Order, Plaintiffs served Defendants with their respective Summons and a copy of the Amended Complaint via e-mail and website posting on March 1, 2021. (See Gigante Decl. in Support of FDJ ¶ 4; Proof of Service on filed with the Court [ECF No. 25].)

The time allowed for Defendants to respond to the Amended Complaint has expired. (Gigante Decl. in Support of FDJ ¶ 5.)  Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other formal response. (Id. at ¶ 6.)  To Plaintiffs' knowledge, none of the Defendants are infants or incompetent persons, and, upon information and belief, the Servicemembers Civil Relief Act does not apply. (Id. at ¶ 7.)  On March 23, 2021, the Court entered an Order directing the Clerk to enter default against Defendants for failure to respond to the Amended Complaint within the time required [ECF No. 30], and the Clerk subsequently entered default against Defendants on April 2, 2021 for failure to plead or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure [ECF No. 33]. (Id. at ¶ 8.)  Plaintiffs now move the Court to grant Final Default Judgment against Defendants and submits this Motion in compliance with the Court's Order requiring the same [ECF No. 30].

---

[6] Plaintiffs' *Ex Parte* Motion for Alternate Service, together with supporting declaration and exhibit, [ECF No. 7], are incorporated herein by reference.

III.    <u>ARGUMENT</u>

A.    **Default Judgment Should be Entered Against Defendants.**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.  Personal jurisdiction over Defendants and venue in this district are proper under 28 U.S.C. § 1391 as Defendants direct business activities toward consumers within this district and cause harm to Plaintiffs' businesses through the Internet based e-commerce stores operating under the Seller IDs.  (<u>See</u> Am. Compl. ¶¶ 1-3, 8, 10, 28.)

1.    **Default Judgment is Proper.**

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) following the entry of default by the court clerk under Rule 55(a). <u>See</u> FED. R. CIV. P. 55. Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's amended complaint, other than those related to damages, will be taken as true.  <u>PetMed Express, Inc. v. Medpets.com</u>, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (citing <u>Buchanan v. Bowman</u>, 820 F.2d 359 (11th Cir. 1987)). In this case, the Amended Complaint, pleadings, and declaration filed in support of Plaintiffs' Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

2.    **Factual Allegations Establish Defendants' Liability.**

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive."  In order to prevail on their trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate (1) they had prior rights to the mark at issue and (2) Defendants had adopted a mark or name that was the same, or confusingly similar to its mark,

8

such that consumers were likely to confuse the two. See Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997)).

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiffs.  15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S.Ct. 2753, 2763 (1992).

Whether a defendant's use of a plaintiff's trademarks creates a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. See Planetary Motion, 261 F.3d at 1193 n.4 ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims.').  Further, the test to determine trademark infringement liability under Florida common law is the same as the likelihood of consumer confusion test outlined in § 32(a) of the Lanham Act. See PetMed Express, Inc., 336 F. Supp. 2d at 1217-18.

The well-pled factual allegations of Plaintiffs' Amended Complaint, including specifically those pled in Paragraphs 8-14; 24-39, 41-43, 48-52, 56-58, 61-63 [ECF No. 19], properly allege the elements for each of the above claims. Moreover, the factual allegations in

Plaintiffs' Amended Complaint, substantiated by the evidence submitted herewith, conclusively establish Defendants' liability under each of the claims asserted in the Amended Complaint. (See Giroux Decl. ¶¶ 12-14; Rogan Decl. ¶¶ 13-15; Burns Decl. ¶ 4.)  Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

> **B.** **Plaintiffs' Requested Relief Should be Granted.**

> **1.** **Entry of a Permanent Injunction is Appropriate.**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  Burger King Corp. v. Agad, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988)).  Moreover, even in a default judgment setting, injunctive relief is available.  See e.g., PetMed Express, Inc., 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction.  See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")  Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from continuing to infringe any of Plaintiffs' intellectual property rights, including the Acushnet Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship

favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93 (2006).  As demonstrated herein, and based upon the issuance of the temporary restraining order and preliminary injunction entered in this matter, Plaintiffs have clearly carried their burden on each of the four factors, warranting permanent injunctive relief, because Defendants have unlawfully used Plaintiffs' trademarks and associated goodwill to make a profit. Accordingly, permanent injunctive relief is appropriate.

Defendants' actions merit permanent injunctive relief, not only to protect Plaintiffs' reputations, but also to protect consumers from being deceived as to the quality and source of products bearing Plaintiffs' trademarks.  The facts alleged in Plaintiffs' Amended Complaint, substantiated by the evidence submitted herewith, shows Defendants are "continuously infringing and inducing others to infringe" the Acushnet Marks by using them to advertise, promote, and sell goods bearing marks which are identical or altered to be identical to the Acushnet Marks. (See Am. Compl. ¶ 42; see also Giroux Decl. ¶¶ 12-14; Rogan Decl. ¶¶ 13-15; Burns Decl. ¶ 4; see generally Defendants' Seller IDs attached as Comp. Ex. 1 to the Burns Decl.)

Plaintiffs are clearly suffering, and will continue to suffer, irreparable injury if Defendants' infringing activities are not permanently enjoined. (See Giroux Decl. ¶ 18; Rogan Decl. ¶ 19.)   In trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.").  In any event, Plaintiffs' Amended Complaint alleges that

Defendants' unlawful actions have caused Plaintiffs irreparable injury, and will continue to do so if Defendants are not permanently enjoined. (Am. Compl. ¶ 38.)  Defendants have defaulted upon Plaintiffs' factual allegations in that respect.

Additionally, Plaintiffs have no adequate remedy at law so long as Defendants continue to use the Acushnet Marks in connection with the operation of the Internet based e-commerce stores under the Seller IDs because Plaintiffs will have no control of the quality of what appear to be their products in the marketplace.  An award of monetary damages alone will not cure the injury to Plaintiffs' reputations and goodwill which will result if Defendants' infringing and counterfeiting actions are allowed to continue.  Moreover, it can hardly be said that Defendants face hardship in refraining from their willful infringement of Plaintiffs' trademarks, whereas Plaintiffs face hardship from loss of sales and their inability to control their reputations.  In reality, Defendants have no cognizable hardship, as they will be prohibited from selling counterfeit goods, which is an illegal act to begin with. Finally, the public has an interest in the issuance of a permanent injunction against Defendants in order to prevent consumers from being misled by Defendants' products.  See Chanel, Inc. v. besumart.com, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added) (citation omitted)); BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc., 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount.")  Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect Plaintiffs' property interest in the Acushnet Marks, which are the touchstones of trademark law.

Furthermore, as admitted by Defendants through default, (i) the Seller IDs and associated payment accounts are essential components of Defendants' online activities, and (ii) the Seller IDs themselves are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs. (See Am. Compl. ¶ 14.)  Therefore, in order to effectuate the injunction as a practical matter, all listings and associated images of goods bearing counterfeits and/or infringements of the Acushnet Marks via the e-commerce marketplace stores operating under the Seller IDs, including but not limited to the listings and associated images bearing and/or using counterfeits and/or infringements of the Acushnet Marks, should be permanently removed by the Internet marketplace website and operator and/or administrator. Moreover, the goods of each Defendant bearing one or more of the Acushnet Marks that are in the inventory, possession, custody or control of the Internet marketplace website operators and/or administrators, should be surrendered to Plaintiffs.   Absent the removal of the listings and images of goods bearing counterfeits and/or infringements of the Acushnet Marks, Defendants will remain free to continue infringing Plaintiffs' trademarks with impunity, will continue to benefit from the Internet traffic to those e-commerce stores built through the unlawful use of Plaintiffs' trademarks, and will continue to defraud the public by their illegal activities. Further, the surrender of the counterfeit merchandise bearing the Acushnet Marks from Internet marketplace websites would permanently remove these counterfeit goods from the stream of commerce to further protect the public from being defrauded by Defendants' worthless items.

The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the

essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould

each decree to the necessities of the particular case."); United States v. Bausch & Lomb Optical

Co., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme

by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an Internet-based counterfeiting and infringement scheme and

are profiting from the deliberate misappropriation of Plaintiffs' rights.  Accordingly, the Court

should permanently prohibit Defendants from conducting their unlawful activities and eliminate

the means by which Defendants conduct their unlawful activities by requiring their listings and

associated images be removed to further prevent them from being used for the sale of counterfeit

goods.[7]

---

[7] See e.g., Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule
"A", Case No. 20-cv-62121-RAR (S.D. Fla. Jan. 28, 2021) (order requiring, *inter alia*, Internet
marketplace website operators to permanently remove all listings and associated images of the
products bearing counterfeits and/or infringements of plaintiff's trademarks and cease fulfillment
of and sequester all goods in its inventory, possession, custody, or control that bear one or more
of the plaintiff's trademarks at issue and surrender the same to plaintiff); Chanel, Inc. v.
Individuals, P'ships & Unincorporated Ass'ns, Case No. 20-cv-61558-RAR (S.D. Fla. Nov. 16,
2020)  (same); adidas AG v. Individuals, P'ships & Unincorporated Ass'ns, Case No. 20-cv-
61146-RAR (S.D. Fla. Oct. 21, 2020) (same); Tiffany (NJ) LLC v. Individuals, P'ships &
Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-61598-RAR (S.D. Fla. Oct.
21, 2020) (same); MPL Communications Limited v. Individuals, P'ships & Unincorporated
Ass'ns Identified on Schedule "A", Case No. 20-cv-61418-RAR (S.D. Fla. Oct. 20, 2020)
(same).  See also Malletier v. Individuals, P'ship, No. 19-cv-61021-MGC, 2019 U.S. Dist.
LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same) Fendi S.R.L. v. Joe Bag, No. 19-cv-61356-
RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (same); Chanel, Inc. v. Fendona,
No. 19-cv-60734-BB, 2019 U.S. Dist. LEXIS 225780 (S.D. Fla. May 23, 2019) (same).  Accord
Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case
No. 20-cv-60519-RS (S.D. Fla. Oct. 5, 2020) (same); Gucci Am., Inc. v. The Individuals,
P'ships, and Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-60397-WPD
(S.D. Fla. July 8, 2020) (same); adidas AG v. The Individuals, P'ships, and Unincorporated
Ass'ns, Case No. 19-cv-63109-RKA (Mar. 31, 2020) (same); Chanel, Inc. v. aozhu9284, Case
No. 19-cv-63068-KMW (S.D. Fla. Feb. 24, 2020) (same); MPL Communications Limited v.
1230h0h Store, Case No. 19-cv-62891-BB (S.D. Fla. Feb. 12, 2020) (same).

**2.      Damages - Count I for Trademark Counterfeiting  and Infringement.**

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1).  In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs elect to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to set an amount of statutory damages. PetMed Express, Inc., 336 F. Supp. 2d at 1219 (citing Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990).  Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.").  Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain.  See, e.g., S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.)  See also PetMed Express, Inc., 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").  This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award.  PetMed Express, Inc., 336 F. Supp. 2d at 1220.  A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless

disregard" to a plaintiff's intellectual property rights.  See Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003).  Willfulness may also be inferred from the defendant's default.  See PetMed Express, Inc., 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true).  In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

The Acushnet Marks are renowned worldwide as identifiers of quality goods, and the fact that Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows their desire and purpose to trade upon Plaintiffs' goodwill. Indeed, in a case of clear-cut copying such as this, it is appropriate to infer that Defendants intended to cause confusion and benefit from Plaintiffs' reputations, to Plaintiffs' detriment.  See PetMed Express, Inc., 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendants' use of such a mark that was confusingly similar). Moreover, in this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).  Ultimately, the evidence clearly establishes Defendants intentionally copied one or more of the Acushnet Marks for the purpose of deriving the benefit of Plaintiffs' world-famous reputations, and Defendants defaulted on Plaintiffs' allegations of willfulness. (Am. Compl. ¶ 31.)  See Arista Records, Inc. 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default.)  As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities.

Based on the above considerations, Plaintiffs respectfully request the Court award statutory damages against each Defendant. The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one (1) type of good bearing at least one (1) mark which is in fact a counterfeit of one of the Acushnet Marks. (See Am. Compl. ¶¶ 16, 24-32, 41-43; see also Giroux Decl. ¶¶ 12-14; Rogan Decl. ¶¶ 13-15; Burns Decl. ¶ 4 and Comp. Ex. "1" thereto.)  And, as noted above, based upon the evidence Plaintiffs have presented, it is reasonable to infer Defendants' infringement was willful. As such, Plaintiffs are requesting a statutory damage award of one million dollars ($1,000,000.00) per mark, per type of good.  As each Defendant used at least one counterfeit mark on one type of good, Plaintiffs request a statutory damages award in the amount of $1,000,000.00 against each Defendant as partial compensation to Plaintiffs and to deter Defendants and others from continuing to counterfeit Plaintiffs' trademarks.

Plaintiffs' requested damage amount is well within the permissible range prescribed under 15 U.S.C. § 1117(c)(2) and should be sufficient to meet the stated goals of 15 U.S.C. § 1117(c) to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants. Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; PetMed Express, Inc., 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct."). This Court and others have granted statutory damages under the Lanham Act similar to Plaintiffs' request herein.[8]

---

[8] See, e.g., Chanel, Inc. v. replicaschanelstore.com, Case No. 20-cv-62554-RAR (S.D. Fla. Feb. 2, 2021) (awarding plaintiff $1,000,000.00 against each defendant); Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 20-cv-62121-RAR (S.D. Fla. Jan. 28, 2021) (same); Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns, Case

3.   **Damages - Count II for False Designation of Origin, Count III for Common Law Unfair Competition, and Count IV for Common Law Trademark Infringement.**

Plaintiffs' Amended Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II), common law of unfair competition (Count III), and common law trademark infringement (Count IV). As to Counts II, III, and IV, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Counts II, III, and IV should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court enter final default judgment and a permanent injunction against Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

---

No. 20-cv-61558-RAR (S.D. Fla. Nov. 16, 2020)  (same); <u>adidas AG v. Individuals, P'ships & Unincorporated Ass'ns</u>, Case No. 20-cv-61146-RAR (S.D. Fla. Oct. 21, 2020) (same); <u>Tiffany (NJ) LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"</u>, Case No. 20-cv-61598-RAR (S.D. Fla. Oct. 21, 2020) (same); <u>MPL Communications Limited v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"</u>, Case No. 20-cv-61418-RAR (S.D. Fla. Oct. 20, 2020) (same); <u>Fendi S.R.L. v. Joe Bag</u>, No. 19-cv-61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (same).  See also <u>Malletier v. Individuals, P'ship</u>, No. 19-cv-61021-MGC, 2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same). Accord <u>Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"</u>, Case No. 20-cv-60519-RS (S.D. Fla. Oct. 5, 2020) (same); <u>Gucci Am., Inc. v. The Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"</u>, Case No. 20-cv-60397-WPD (S.D. Fla. July 8, 2020) (same); <u>adidas AG v. The Individuals, P'ships, and Unincorporated Ass'ns</u>, Case No. 19-cv-63109-RKA (Mar. 31, 2020) (same); <u>Chanel, Inc. v. aozhu9284</u>, Case No. 19-cv-63068-KMW (S.D. Fla. Feb. 24, 2020) (same); <u>MPL Communications Limited v. 1230h0h Store</u>, Case No. 19-cv-62891-BB (S.D. Fla. Feb. 12, 2020) (same).

Dated:  April 2, 2021.                Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Virgilio Gigante**_____
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiffs

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER, SELLER ID, FINANCIAL ACCOUNT**
**INFORMATION, INFRINGING PRODUCT NUMBER, AND E-MAIL**

| Defendant Number | Defendant / Seller ID | Financial Account Information: Payment Account / Store Number | Infringing Product Number / E-mail Address |
|---|---|---|---|
| 1 | aiGOLF Store | 910444207 | 1005001614555537 1005001831511267 1005001415891120 |
| 2 | Andiarysport Store | 910901007 | 1005001605560891 |
| 3 | DKSPORTS Store | 3213042 | 1005001446655263 |
| 4 | Echogolf Store | 5588328 | 4000702316694 |
| 5 | Golfgrips Supermarket Store | 910334130 | 1005001325633256 |
| 6 | GolfLoverManufacturer Store | 910324302 | 1005001319385257 |
| 7 | GOOD LOFT Store | 5794100 | 4001274228820 |
| 8 | iGolf Store | 910365317 | 1005001472012926 1005001463506831 |
| 9 | Luckygolf1987 Store | 5744100 | 4001289144601 1005001380790677 |
| 10 | MUT sprots Store | 2391077 | 33041402188 4000959553560 |
| 11 | PXGTOPER Store | 4553006 | 4000744531890 4000316842463 pxgtoper@163.com |
| 12 | SC Factory Store | 1727153 | 1005001352566721 1005001578028801 |
| 13 | SC_Factory Store | 910732074 | 1005001578028801 297025451@qq.com |
| 14 | Shop3212107 Store | 3212107 | 4000034053984 |
| 15 | Shop5595314 Store | 5595314 | 4001300995057 |
| 16 | Shop5781620 Store | 5781620 | 4001011288310 4001007487747 |
| 17 | Shop5888851 Store | 5888851 | 4001193349153 |
| 18 | Shop5972047 Store | 5972047 | 1005001265466960 1005001695271037 |
| 19 | Shop900247485 Store | 900247485 | 4001284148489 |
| 20 | Shop910329362 Store | 910329362 | 1005001335238647 |
| 21 | Siranliver Store | 5477010 | 10000016716875 |
| 22 | VERYSPORTS Store | 1046778 | 4001224770744 1005001763318598 |
| 23 | Well-Known Clubs Store | 5882625 | 1005001267303489 |
| 24 | KQ9019 Store | Store No.: 5579019 huangqinbing88@163.com | 4001079589078 4000987604308 4000575333338 |

| 25 | Shop900240195 Store | Store No.: 900240195 673517662@qq.com | 1005001357679827 |
|---|---|---|---|
| 26 | ande-4785 | anya.devi@asyifa.heppy.team | 363071812629 |
| 27 | asju-17 | jutol1029asen@gmail.com | 164325521642 |
| 28 | behary-0 | burunglovebirts@yahoo.com | 402356904680 |
| 29 | binnaf_store | rungkatbinnafsih9@gmail.com | 233640588438 |
| 30 | c59wol39 | c59wolusongo@yahoo.com | 402332127229 |
| 31 | coc6878 | coclothtwo@gmail.com | 383636683583 |
| 32 | cola-7601 | danayuli97@gmail.com | 402332487240 |
| 33 | cueretpe-76 | cueretpenyetauo64@yahoo.com | 224113726928 |
| 34 | dedden.store | dedideni660@yahoo.com | 184428963897 |
| 35 | diapri_93 | dimasaprianto97@yahoo.com | 303672388654 |
| 36 | erodul-0 | ojookakeanmicin093@yahoo.com | 402335561154 |
| 37 | erusuryan_65 | eruyatsuryaningrat18@yahoo.com | 193556202329 |
| 38 | fesam_3 | fery.sambito@gmail.com | 303666270179 |
| 39 | haha_7586 | jamilajamil973@gmail.com | 193605510410 |
| 40 | iito21 | iitogcqw@tom.com | 313110361999 |
| 41 | ilyamuni.store | munir_ilyas@yahoo.com | 174388656181 |
| 42 | newari_0 | semangkananas1@yahoo.com | 392903933188 |
| 43 | nug-3307 | telekoontho7368@yahoo.com | 383690386244 |
| 44 | ojookakea27 | ojookakeanmicin009@yahoo.com | 333676425962 |
| 45 | ojookakea-36 | ojookakeanmicin086@yahoo.com | 224117574857 |
| 46 | paijolo74 | paijolonanyar4@gmail.com | 193563240585 |
| 47 | rapet67 | ratupetrok5@gmail.com | 264787454682 |
| 48 | rapy-0 | ranipyta@yahoo.com | 274468071931 |
| 49 | sangh389 | Cla_rke@126.com | 373176427008 |
| 50 | sapi7076 | sapimoo02@gmail.com | 133502265028 |
| 51 | yest_store | relist2020@hotmail.com | 373174476073 |
| 52 | cindysports | 20826346 | 545613472 |
| 53 | Highqualit04 | 21553347 | 570086603 |
| 54 | huigolf22 | 21559900 | 575776704 |
| 55 | market999999 | 20481541 | 403680814 |
| 56 | BasketballPP | 5f69a2b37cc0a0d3f0d40d9a | 5f88fa8655768140de8715f6 |
| 57 | bnmxfhr | 5f8526299a9d9000488ed466 | 5f8fcae5a281df124c3efb7a |
| 58 | BriannaMonroe | 5f6719dbab83be25411b90f7 | 5f9240e0740746a83f5bebfa |
| 59 | chenxuai | 59ccf593eea5c53fc66a8d7a | 5f6aeec58c189500516f3d23 |
| 60 | Close together | 5f69a9cb06aeb544f9001b1e | 5f8900b637ef4cf42b515420 |
| 61 | Dimet673 | 5f5ca38ef39e94e84c6eb1be | 5f6abc62ced11300443e3975 |
| 62 | eunicer | 5a558feb6b5016230dcaf48f | 5f61d4bbe574a50041b55ab8 |
| 63 | fdvgbh | 5e5b6aed60863e8340b4112f | 5f927d083ea48b0c303adf73 |
| 64 | gfdrty | 5e5b98712861d59780283f28 | 5f6809b4aaab8512a67fa0b9 |
| 65 | gjgfkfgjfk | 5f83f37de6dcf795c5d8dad8 | 5f8d2c860697678f34feb251 |
| 66 | HERONGHUI241 | 5f0d695e0205239d4ddc92f7 | 5f8e3378719876028273ea60 |

| 67 | hgtyrt | 5e5baf4bf5995f144ace1113 | 5f602f0bb8e53309e11f2aa2 |
| 68 | hhtrsyryesy | 5ee5c7c137ba913e1736c043 | 5f896f6171ebf11bb641d4a2 |
| 69 | huhtulk | 5e5b42198e8b86c825591cf4 | 5f927ce2f2dafe004961b079 |
| 70 | KEKEYY | 5f678f5a2f66f3345d951c77 | 5f6d52f2a498d58dab35eef1 |
| 71 | nnvhuqupo | 5aea61f6cc8a25111e5c40fe | 5f51bcf17db1df0565c54dfe |
| 72 | oijjjnmhfgv | 5d4be48b22f30121fdb18417 | 5f6b12533a6f24166c18a820 |
| 73 | qimhfkiu | 5e5b58726ac64edb57f9d8be | 5f6b0c2fbaf593004db51883 |
| 74 | qingchunwuji | 5e5b1c0a6ac64e3780fa812f | 5f7acfb8f377b59731dc88db |
| 76 | SESESER | 5f678a2206aeb5c6b000178b | 5f6d7ec1898dbb7a7cfc9427 |
| 77 | shunlidli | 5e5b5d0777179edd066c9bba | 5f6170bcbdcbbc003dad09a9 |
| 78 | tianqigg | 5e5b1f168e8b86b104591cf1 | 5f927cd676cdb60a84cc2350 |
| 79 | vbmzrtearew | 5e996211eece766e87664102 | 5f4ca647c5374b004646eca8 |
| 80 | wderfg | 5e5b66cf35e4cbe679d6f3ec | 5f6b0ba1cdf68315c757366a |
| 81 | Yeisjdaliioakjoio | 5f69b4843c79da86dd1242f3 | 5f924de40ca21e5cf391c4f9 |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 2, 2021, a true copy of the foregoing was served

upon Defendants via the e-mail addresses at which Defendants were served, and by posting

copies of the same on Plaintiffs' designated service notice website appearing at the URL

http://servingnotice.com/V8Pa8F/index.html.


**Virgilio Gigante**_____
Virgilio Gigante